**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-1101

LAVELL WILLIAMS, Plaintiff

v.

UNIVERSITY OF NORTHERN COLORADO,
Defendant

---

## COMPLAINT AND JURY DEMAND

---

## I. NATURE OF THE CASE

1. This action arises out of the employment and employment termination of Lavell Williams by the University of Northern Colorado ("Defendant" or "UNC").

a. Mr. Williams worked as Director of Strength and Condition in UNC's Department of Athletics from January 9, 2012 until his termination on November 30, 2015.

2. Defendant's disparate treatment and discharge of Mr. Williams was motivated by his race, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), and the Colorado Anti-Discrimination Act, as amended, C.R.S. § 24-34-401 et seq. ("CADA"). This is an action for damages and equitable relief to redress the deprivation of Mr. Williams' rights under Section 1981, Title VII, and CADA, and for attorney's fees and costs pursuant to these and other federal statutes as applicable.

## II. JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Mr. Williams is alleging violations of his rights under federal statutes, 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended.

4. This Court has supplemental jurisdiction over the pendant state claims under CADA pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because the unlawful employment practices alleged by Plaintiffs were committed within the State of Colorado, and the Defendant is subject to personal jurisdiction in the District of Colorado.

6. The procedural prerequisites for the filing of this lawsuit have been met. Mr. Williams filed a Charge of Discrimination with the EEOC on March 29, 2016 following his November, 30 2015 employment termination asserting that UNC discriminated against him on the basis of his race.

a. Mr. Williams received a "right to sue" letter in the mail from the EEOC on or after February 16, 2017.

## III. PARTIES

7. Plaintiff Lavell Williams is a citizen of the United States of America and, at the time of the incidents giving rise to this action, was a resident of Greeley, Colorado.

8. Defendant UNC is a state sanctioned higher education institution with a principal business street address of 501 20th Street, 248 McKee Hall, Cb 131, Greeley, Weld County, Colorado, and is registered to do business in Colorado.

9. Defendant UNC is an employer and employs 15 or more employees, and is therefore an "employer" as defined by Section 2000(e) of Title VII of the Civil Rights Act of 1964, as amended.

## IV. GENERAL ALLEGATIONS

10. Defendant is a not-for-profit university. It is a state institution of higher education established pursuant to C.R.S. § 23-40-101 et seq.

11. Defendant employed Mr. Williams as Director of Strength and Conditioning in the Department of Athletics.

12. Mr. Williams worked for UNC from January 9, 2012 until November 30, 2015.

13. Mr. Williams was, at all times during his employ, the only African-American employee in the Strength and Conditioning department.

14. Mr. Williams initially worked under Jay Hinrichs, the former Director of Athletics at UNC, and had no issues of racial discrimination with Mr. Hinrichs, however, during his tenure, Mr. Williams was having issues with his supervisor Tracy Damrell.

15. In Fall 2012, Mr. Williams' supervisor Tracy Damrell reported to Jay Hinrichs that Mr. Williams had behaved unprofessionally with one of the team doctors. Mr. Williams dispelled the report by pointing to witnesses to the incident, and Mr. Hinrichs and/or Sherry Fry, the Assistant Athletic Director, concluded there was no unprofessional behavior.

16. Beginning in Spring and Summer 2013, Mr. Damrell began to delay approving Mr. Williams' purchase requests, trying to frustrate him and make his job more difficult.

17. Darren Dunn ("Mr. Dunn") was hired as UNC's new Director of Athletics on November 4, 2013 and officially started in January 2014.

18. On January 3, 2014, Mr. Williams spoke to Mr. Dunn in the latter's office because Mr. Williams had heard that Mr. Dunn questioned Mr. Williams' certification and planned to fire Mr. Williams. Mr. Williams then provided Mr. Dunn with his certification and asked whether Mr. Dunn would be checking certification of the rest of the staff. Mr. Williams also raised concerns regarding issues he was having with Tracy Damrell. Mr. Williams believed Mr. Damrell was the one who reported that he was allegedly not certified. At that time, Mr. Williams also reported that he thought this differential treatment he had received was due to his "looks," and pointed to his face, his skin on his arm and his dreadlocked hair, by which he meant that he is black.

19. Mr. Dunn did not question or seek validation of certification from any other employees.

20. Mr. Dunn also told Mr. Williams that he had heard that Mr. Williams had been kicking people out of the weight room to train football players, an accusation that Mr. Williams denied, pointing out that he trained football players at 5:00 a.m., and no other students were in the weight room at that time.

21. On January 21, 2014, Mr. Dunn met with Mr. Williams and the other members of the strength and conditioning department to discuss various items regarding the strength and conditioning program. Upon information and belief, Mr. Dunn conducted this meeting in an abrasive manner, yelling and pointing at the attendees. At this meeting, Mr. Williams asked the other members if they had reported an issue with kicking students out of the weight room to train football players; all denied making this allegation. Finally, Mr. Williams tried to express concerns about Mr. Dunn's plans for the program based on budgetary constraints.

22. On January 22, 2014, Mr. Dunn emailed Mr. Williams to request more information regarding the concerns he raised in the January 3rd meeting. Mr. Williams did not initially respond to the email because he thought the issues he experienced with Mr. Damrell would go away if he just put his head down and did his job.

23. Mr. Dunn, on January 22, 2014, informed Mr. Williams that Mr. Dunn would be bringing in an outside consultant, Mr. Michael Barnes, to evaluate Mr. Williams and his program.

24. Although Mr. Dunn told Mr. Williams that everyone in the Strength and Conditioning department would be evaluated, only Mr. Williams was evaluated by the outside consultant.

25. On January 24, 2014, Mr. Williams provided Mr. Dunn a letter that described issues he had with other personnel in the Department of Athletics, namely Mr. Damrell.

26. On February 4, 2014, Mr. Williams met with the Director of Human Resources, Mr. Marshall Parks, regarding his issues with Mr. Damrell. When Mr. Parks asked Mr. Williams if he thought he was being discriminated against, Mr. Williams stated that he was scared to call it discrimination because of fear of retaliation, but, that, yes, he thought he was being discriminated against. Mr. Williams chose not to make a formal complaint and did not feel the need to have a mediation with Mr. Damrell because Mr. Parks agreed to remove Mr. Damrell as Mr. Williams supervisor.

27. Ms. Sarah Adams, Associate Athletic Director, was appointed as Mr. Williams supervisor following the February 4th meeting with Mr. Parks.

28. Mr. Barnes, the outside consultant, began his review of Mr. Williams in February 2014 and provided Ms. Adams and Mr. Dunn a report on February 24, 2014.

29. After repeated requests, neither Ms. Adams nor Mr. Dunn discussed the report with Mr. Williams until June or July of 2014.

30. Mr. Williams spoke directly to Mr. Barnes about his report. Mr. Barnes told Mr. Williams that, overall, he was doing an excellent job.

31. The report identified a few areas of improvement for no reason other than athlete safety, such as equipment that needed repair or replacement, which Mr. Williams undertook to complete immediately after he was made aware of the concerns. The report also stated that the Strength and Conditioning staff were performing adequately and even admirably.

32. Mr. Williams met with Marshall Parks again after the report came back from Mr. Barnes. He reported that Mr. Barnes had told Mr. Williams that he believed "something doesn't add it up here," which Mr. Williams took to mean that his supervisors were looking for problems with his performance and the report from the consultant didn't show that. Mr. Williams also reported at that time that he thought Mr. Dunn had something against him. Mr. Dunn wouldn't even speak to him. Mr. Dunn would be walking toward Mr. Williams and would turn and walk the other way upon seeing Mr. Williams. Mr. Williams' students would say to him "Why doesn't [Mr. Dunn] like you?"

33. In Mr. Williams' performance evaluation for July 1, 2014 through June 30, 2015, Ms. Adams alleges that Mr. Williams was deficient in four of seven areas: (1) posting of weight room policies, (2) drafting of a strength and condition mission statement, (3) holding in-service activities along with communication, and (4) improving nutrition for student-athletes.

34. Ms. Adams did not inform Mr. Williams about any complaints or issues regarding the strength and conditioning program.

35. Mr. Williams (1) had the policies posted at all times, (2) had completed a mission statement, (3) did not have budget for in-service activities (such as visits to other schools) and was not aware of any concerns regarding his communication, and (4) did not disregard student nutrition.

36. Mr. Williams did not receive his full 3% salary increase for the previous year.

37. Mr. Williams' Caucasian assistant, Ms. Katherine Simon, received her full 3% salary increase.

38. Mr. Williams was told that he did not receive his full 3% increase because he did not meet his performance goals, many of which were unattainable due to budget constraints, even though Mr. Williams used his own funds at times to visit other schools.

39. In September 2015, Ms. Adams discussed goals with Mr. Williams, including having Mr. Williams increase his visits to other schools to look at their programs, which put significant strain on the budget.

40. Mr. Williams did not receive substantive feedback from Ms. Adams and Ms. Adams did not raise any specific issues or concerns with Mr. Williams prior to his termination.

41. On November 30, 2015, Mr. Dunn and Ms. Adams met with Mr. Williams and terminated his employment. In the meeting, Mr. Dunn stated that he "wanted to go in a different direction."

42. Upon information and belief, UNC has hired a Caucasian individual to replace Mr. Williams.

## V. FIRST CLAIM FOR RELIEF
## (Violation of the Colorado Anti-Discrimination Act, § 24-34-401, et seq.)

43. Plaintiff incorporates by reference all of the above paragraphs.

44. At all material times, Defendant has been an "employer" within the meaning of the Colorado Anti-Discrimination Act, § 24-34-401(3) et seq ("CADA").

45. At all material times, Defendant has employed "employees," including Plaintiff, within the meaning of the CADA, § 24-34-401(2), *et seq*. Mr. Williams was an employee of Defendant UNC within the meaning of the CADA from January 9, 2012 until November 30, 2015.

46. By virtue of his race, African-American, Mr. Williams is a member of a protected group under CADA.

47. On or about March 29, 2016, Mr. Williams filed Charges of Discrimination with the EEOC, based on illegal race discrimination in violation of CADA. He received a "right to sue letter" from the EEOC on or about February 16, 2016.

48. Defendant consciously and purposefully discriminated against Mr. Williams because of his race, in violation of CADA, by terminating Mr. William's employment.

49. As a proximate cause of Defendant's above-described unlawful discrimination, Plaintiff Lavell Williams has suffered and continues to suffer economic losses and emotional distress.

## VI. SECOND CLAIM FOR RELIEF
**(Violation of the Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq.)**

50. Plaintiff incorporates by reference all of the above paragraphs.

51. At all material times, Defendant has been an "employer" within the meaning of the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e(b) *et seq.*

52. At all material times, Defendant has employed "employees," including Plaintiff, within the meaning of the Title VII, 42 U.S.C. § 2000e(f) *et seq.* Mr. Williams was an employee

of Defendant UNC within the meaning of the Title VII from January 9, 2012 until November 30, 2015.

53. By virtue of his race, African-American, Mr. Williams is a member of a protected group under Title VII.

54. On or about March 29, 2016, Mr. Williams filed Charges of Discrimination with the EEOC, based on illegal race discrimination in violation of Title VII. He received a “right to sue letter” from the EEOC on or about February 16, 2016.

55. Defendant consciously and purposefully discriminated against Mr. Williams because of his race, in violation of Title VII, by terminating Mr. William’s employment.

56. As a proximate cause of Defendant’s above-described unlawful discrimination, Plaintiff Lavell Williams has suffered and continues to suffer economic losses and emotional distress.

## VII. THIRD CLAIM FOR RELIEF

**(Discrimination on the Basis of Race in the Form of Disparate Treatment Pursuant to 42 U.S.C § 1981)**

57. Plaintiff incorporates by reference all of the above paragraphs.

58. Plaintiff was subject to disparate treatment when Defendant refused to provide Plaintiff his 3% salary increase and subsequent termination on the basis of Plaintiff’s race in violation of 42 U.S.C. § 1981.

59. Defendant’s racial discrimination with respect to Mr. William’s employment was purposeful and intentional.

60. As a proximate cause of Defendant’s above-described unlawful discrimination, Mr. Williams has suffered and continues to suffer economic losses and emotional distress.

## VIII. PRAYER FOR RELIEF

61. Plaintiff Lavell Williams respectfully requests that this Court enter judgment in his favor against Defendant and awarding the following relief:

a. Compensatory damages, including but not limited to, damages for emotional distress;

b. Back pay;

c. Front pay;

d. Reinstatement to his former position, and other injunctive and/or declaratory relief;

e. Pre-judgment and post-judgment interest;

f. Liquidated damages;

g. Punitive damages in an amount to be determined at trial;

h. Attorneys' fees and costs of this action, including expert witness fess; and

i. Such other and further relief as justice allows.

## IX. PLAINTIFF REQUESTS A TRIAL BY JURY

Date: May 4, 2017

Respectfully submitted,

RILEY LAW LLC

Kelli Riley

Kelli R. Riley, Esq.
Riley Law LLC
2005 W. 9th Street, Suite 6
Greeley, CO 80631
Telephone: (970) 301-1350
kelli@rileylawllc.com
Attorney for Plaintiff Lavell Williams